UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

NO. 15 CV 23616 DPG

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

$70,670.00 IN U.S. CURRENCY,
$101,629.59 IN U.S. CURRENCY SEIZED
FROM WELLS FARGO BANK CASHIER'S
CHECK NO. 6648201039, AND $30,000.00
IN U.S. CURRENCY SEIZED FROM CHASE
BANK CASHIER'S CHECK NO. 1178710368,

        Defendants *In Rem*.

_____/

### CLAIMANTS' MOTION TO DISMISS FORFEITURE COMPLAINT FOR FAILURE TO ESTABLISH PROBABLE CAUSE FOR SEIZURE

Claimants, KURVAS SECRET BY W, WILSON COLORADO, and MILADIS SALGADO, by and through their undersigned counsel and pursuant to Federal Rule of Civil Procedure 12(b)(6), Rule G(2)(f) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, and the Fourth Amendment of the United States Constitution, hereby move to dismiss the government's complaint because there was no probable cause for the seizure of Defendant Currencies on the date of seizure, May 11, 2015. In support of the instant motion, Claimants state:

### NATURE OF THE CASE

The government alleges that Defendant Currencies are forfeitable because: 1) they are proceeds furnished or intended to be furnished for illegal narcotics (First Claim); 2) they

1

are proceeds traceable to "specified unlawful activity", that is, narcotics trafficking and/or the interstate transportation of stolen property (Second Claim); and/or 3) property involved in money laundering activities (Third Claim). DE 1 pages 8 - 9.

To support these allegations, the government avers that from October 2014 to at least May 2015, Claimant, Wilson Oswaldo Colorado-Echeverry ("COLORADO"), was involved in laundering drug proceeds, utilizing several residences throughout South Florida to store narcotics and bulk currency, including the residence of Tatiana Alejandra Narvaez-Caicedo ("Narvaez-Caicedo"). DE 1 page 2 ¶ 6.

The Complaint then alleges that a search of COLORADO'S home on May 11, 2015, revealed the presence of narcotics and narcotics paraphernalia. Specifically, the Complaint alleges that law enforcement agents discovered: 1) a green leafy substance suspected to be marijuana; 2) a kilogram press; 3) two (2) to three (3) small bags containing a white powdery substance suspected to be cocaine; and 4) a large bong and heat sealer. DE 1 pages 3-4 ¶ 11.

The Complaint goes on to allege that $15,070.00 in cash was discovered in the master bedroom closet of the home and that a narcotics-detection canine alerted to the presence of drugs on said cash. DE page 4 ¶ 13 -15. Paragraph 16 of the Complaint alleges that $55,600.00 in cash was discovered under a night stand in another bedroom and that a narcotics-detection canine alerted to the presence of drugs on that cash. DE 1 Pages 4-5. In all, the Complaint alleges that $70,670.00 in cash was discovered in Claimants COLORADO and SALGADO'S home.[1]

---

[1]Note that Claimant COLORADO has indicated that there was a total of approximately $112,000.00 in cash, exclusive of the cashiers checks, in the home.

The Complaint then avers that Narveaz-Caicedo worked at AnnChery as a general manager selling women's undergarments, including corsets, girdles and waist cinchers. That Narvaez-Caicedo was fired from AnnChery for stealing merchandise, and for supplying corsets and other undergarments to Claimant COLORADO without payment.[2] And, that Narvaez-Caicedo is currently facing state felony fraud charges for her activities at Annchery. DE 1 page 3 ¶'s 7 - 9.[3]

## MEMORANDUM OF LAW

The Fourth Amendment requires the government to have probable cause at the time it seizes property. Specifically, the Fourth Amendment states:

> "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

> See U.S.C.A. Amend. 4; See also *Jones vs. United States Drug Enforcement Administration*, 819 F. Supp. 698 (M.D. Tenn. 1993)("Government may not demonstrate probable cause when, as here, it possessed nothing more than

---

Therefore, there are approximately $42,000.00 in cash unaccounted for. This has been brought to the government's attention.

[2]This allegation is directly refuted by Claimants, KURVAS SECRET by W and COLORADO, business records.

[3]Note that Claimants are not charged with stealing merchandise from AnnChery or any other criminal offense. In fact, Claimant COLORADO met with the Detectives investigating that case and provided them with all the invoices and payments made by Claimant KURVAS SECRET by W to AnnChery over the course of their business dealings. On the date of the seizure in this case, May 11, 2015, Claimant COLORADO attempted to also show the agents in this case the same invoices and payments proving his legitimate business dealings with AnnChery but, unlike the detectives in the State felony case against Narveaz-Caicedo, the agents in this case were not interested in reviewing them.

mere suspicion at time of <u>seizure</u>, and used forfeiture suit to discover more information."); *United States vs. 255 Broadway*, 9 F.3d 1000, 1006 (1st Cir. 1993)(".. [t]he government need only show that it had probable cause to institute forfeiture proceedings."); *United States v. One Parcel of Real Estate Located at 1948 Martin Luther King Drive*, 91 F. Supp. 2d 1228 (D.D. Ill. 2000).

A <u>seizure</u> is defined as "[T]he act of taking possession of property, e.g., for violation of law or by virtue of an execution. Term implies a taking or removal of something from the possession, actual or constructive, of another person or persons. *Molina vs. State*, 53 Wis.2d 662, 193 N.W.2d 874, 877." Black's Law Dictionary 1219 (5th ed. 1979). A <u>seizure</u> is often executed on an *ex parte* basis at the sole discretion of the seizing governmental agent. The <u>seizure</u> in this case occurred on May 11, 2015.[4]

A <u>forfeiture</u> is defined as "[S]omething to which the right is lost by the commission of a crime or fault or the losing of something by way of penalty. *Ridgeway vs. City of Akron*, Ohio App., 42 N.E.2d 724, 726." Black's Law Dictionary 584 (5th ed. 1979). A <u>forfeiture</u> occurs after a <u>seizure</u> and after a reviewing entity, administrative or judicial, decides that the property should be forfeited to the government. A <u>seizure</u> and <u>forfeiture</u> must be distinguished for proper legal analysis.

The Civil Asset Forfeiture Reform Act ("CAFRA") allows the government to use after acquired evidence to establish that the property is <u>forfeitable</u>. See 18 U.S.C. 983(c)(2). Additionally, "[N]o complaint may be dismissed on the ground that the government did not have adequate evidence at the time the complaint was filed to establish the <u>forfeitability</u>

---

[4]Note that the day after the seizure, May 12, 2015, the government obtained *ex parte* seizure warrants from U.S. Magistrate Judge Andrea Simonton for the funds represented by the cashier's checks. DE 1 page 5 ¶ 21.

of the property." See 18 U.S.C. 983(a)(3)(D).[5] However, CAFRA does not allow the government to use after acquired evidence for purposes of establishing probable cause for the <u>initial</u> <u>seizure</u> because such an interpretation of CAFRA would render the statute unconstitutional under the Fourth Amendment. See U.S. Const. IV Amend. (requiring probable cause for the <u>initial</u> <u>seizure</u> of property).[6]

### **Smoke in Mirrors, Red Herrings, Mere Suspicion, and Guilty by Association**

The government's Complaint for forfeiture should be dismissed because there was and is no probable cause for the <u>seizure</u> and attempted forfeiture of Defendant Currencies. Despite the more than four (4) months that the government has been investigating the Claimants[7], the government's Complaint is based on nothing more than smoke in mirrors, red herrings, mere suspicion, and guilt by association.[8]

The government typically files these types of Complaints when it has <u>no</u> <u>real</u>

---

[5]Note that CAFRA raised the government's burden of proof for forfeiture from probable cause to by a preponderance of the evidence standard. See 18 USC 983(b)(3)(c)(1).

[6]By analogy, the Florida Contraband Forfeiture Act ("FCFA"), Fl Stat. § 932.701 - 932.706 has two (2) stages. The first stage requires the State agency to establish probable cause that the seized property is connected to the specific criminal activity alleged. If the State agency is <u>not</u> able to establish probable cause at the first stage, the forfeiture lawsuit is dismissed and the seized property returned to the claimant. However, if the State agency is able to establish probable cause at the first stage, the forfeiture lawsuit proceeds to the second stage where the State agency will need to prove by clear and convincing evidence that the seized property was being used in violation of the FCFA. See <u>Gomez vs. Village of Pinecrest</u>, 41 So.3d 180, 184 (Fla. 2010)(explaining that to effectuate a forfeiture under the FCFA, the seizing agency must engage two stages: a seizure stage and a forfeiture stage).

[7]The government seized Defendant Currencies on May 11, 2015, and filed its' forfeiture Complaint on September 28, 2015; more than four (4) months later.

[8]Significantly, Claimants have not been charged with any criminal violations.

evidence connecting the seized property to criminal activity. So, in order to try and convince courts that it has a case, it tries to focus the courts' attention to drug dog alerts, guilt by association, prior convictions, modest income tax returns, profiles, bill denominations, the currencies packaging methods, etc ... Fortunately, the courts are no longer awed by the government's illusions and are able to see through the smoke.

Probable cause for <u>seizure</u> is determined by looking at the totality-of-circumstances surrounding the <u>seizure</u> of the currency.[9] Probable cause exists when:

> "the Government has reasonable grounds to believe that certain property is subject to forfeiture. These grounds must rise above the level of mere suspicion but need not amount to what has been termed "prima facie proof." The Government must have probable cause to connect the property with narcotics activity, but need not link the property to a particular transaction. The Government does not meet its burden unless it shows probable cause for believing a "substantial connection" exists between the property and the criminal activity which the law seeks to prevent. Probable cause to believe the property is related to *some* illegal activity does not permit its forfeiture. There must be probable cause to believe the property is linked to the activity proscribed in the relevant statute. Probable cause must be shown to have existed at the time the forfeiture proceeding was instituted."

> *United States vs. One Hundred and Thirty-Four Thousand, Seven Hundred and Fifty-Two Dollars United States Currency, More or Less*, 706 F. Supp. 1075, 1081-1082 (S.D.N.Y. 1989).

The facts of the case *sub judice* are analogous with the facts of *United States vs.*

---

[9]This probable cause analysis requires the government, if it is proceeding in good-faith, to also consider any exculpatory and/or mitigating evidence offered by claimants. See *Sanchez vs. City of West Palm Beach*, 149 So.3d 92, 97 (Fla. 4th DCA 2014)("Because the section 932.703(2)(c) probable cause inquiry focuses on the evidence that exists at the time of the hearing, it makes no constitutional or statutory sense to force the 'opposing' party at an 'adversarial' hearing to remain mute when in possession of evidence capable of rebutting the agency's claims of a statutory violation. To give full effect to the statutory scheme and to the requirements of due process, we reject the City's position that a claimant's evidence rebutting probable cause - evidence that the subject property is not the product of illegal conduct - is inappropriate at an adversarial preliminary hearing.").

*Ten Thousand Seven Hundred Dollars and No Cents ($10,700.00) in United States Currency*, 258 F. 3d 215 (3rd Cir.2001).  In *U.S. v. $10,700.00*, the Claimants were stopped in a rental car for speeding on Interstate 295 outside of Wilmington, Delaware. When stopped the three occupants, driver-Antonio Whitfield, Claimant-Jermaine Thomas, and Claimant-Allan Johnson exited the vehicle and produced identification.  At the time of the traffic stop, Officer McManus of the Delaware River and Bay Authority (DRBA) questioned each occupant individually concerning the group's travel plans. Whitfield informed Officer McManus that they were going shopping but he was not sure where. Officer McManus subjectively noticed that Whitfield was nervous, his hands were shaking and he avoided making eye contact. Thomas and Johnson informed Officer McManus that the group was going to visit family in northern New Jersey. Officer McManus noticed that Thomas also avoided making eye contact during her questioning.

Officer McManus then decided, and received consent, to search the car. During her search of the car, Officer McManus smelled a strong odor of air freshener in the interior of the car. Officer McManus did not find any weapons or contraband, however, she discovered an unknown amount of United States currency rubber banned together in the trunk of the car. Johnson claimed ownership of the currency which he said was $21,000.00 and said that it was for the purchase of a car.

Officer McManus then examined a black duffel bag which Thomas claimed as his. In the duffel bag, officer McManus discovered a second unknown quantity of money which was rubber banded in a similar fashion as the first amount she found. Thomas said that there was $8,000.00 in the bag. Johnson and Thomas confirmed that they did not have receipts for the currency stacks of money.

7

Officer McManus then seized both stacks of currency and took it back to DRBA headquarters for further investigation. Claimants went with Officer McManus to be interviewed but refused to provide any other information aside form their personal data. During the course of the investigation, Officer McManus discovered an additional sum of $2,950.00 in cash on Thomas's person. The $2,950.00 were also rubber-banded in a fashion similar to the monies previously discovered in the trunk. On Johnson's person, the police found an additional $430.00 in cash.

Officer McManus and her fellow police officers persisted and continued to investigate the car occupants to make a case for forfeiture of the currency. During their investigation, the officers discovered that the lease agreement for the rental car provided that the vehicle was not to be driven north of the Virginia border, that each of the car occupants lived in an area of Wilmington, North Carolina, known for high drug activity and that Johnson had pending murder charges against him. The officers then summoned a drug detection dog to further investigate the currency. As expected, the drug detection dog alerted to the odor of drug residue on the currency. Whitfield was then issued two traffic citations, the rental car was impounded and the group was transported to a bus station and sent on their way home without the currency.

The officers next focused their investigation on the rental car and the currency. Specifically, Sergeant Gaworski of the DRBA vacuumed the rental car and currency and subjected both to an ION Scan Analysis. According to Agent David Allegretto of the Drug Enforcement Agency (DEA), the ION Scan Analysis indicated "...that the monies showed high levels of cocaine residue, an indication that the monies were involved in drug trafficking." *Id*. at 220.

Delaware River and Bay Authority officers next ran more extensive criminal history background checks on the three occupants of the rental car. During their research, the officers discovered that Whitfield, the driver, had no criminal history. The officers then discovered that Claimant-Thomas had been convicted of one drug offense–conspiracy to traffic in cocaine- on February 7, 1995 approximately three years earlier. The officers then discovered that Claimant-Johnson had been convicted of several drug offenses, including (1) possession of controlled substances on August 16, 1989, and August 3, 1992; (2) possession of cocaine on November 12, 1994; and (3) possession with intent to sell and distribute narcotics on March 14, 1996. The last of Johnson's drug convictions occurring approximately two years before his encounter with Officer McManus and the DRBA.

Based on the aggregate of all these facts, forfeiture proceedings were initiated against the currencies seized. Thomas and Johnson claimed return of the currency. Judge Sue L. Robinson of the United States District Court for the District of Delaware granted a decree of forfeiture in favor of the government. The Claimants appealed arguing that (1) Officer McManus did not have probable cause to detain the currency in violation of the Fourth Amendment and, (2) the government did not have probable cause to institute forfeiture proceedings because the facts within the government's knowledge at the time that it filed the *in rem* complaints were insufficient to establish a nexus between the currency and any predicate drug activity by claimants. The court of appeals decided the case on the latter basis.

On appeal, the United States Court of Appeals for the Third Circuit, reviewed the District Court's probable cause determination *de novo* and concluded that the government failed to present sufficient credible evidence, both qualitatively and quantitatively, to

support a probable cause determination that the money seized from claimants was drug related.

In particular, the Court considered the combined aggregate of facts relied on by the government in its attempt to forfeit the currency and stated "...we review each piece of evidence only to determine whether it is probative, not whether it establishes probable cause standing alone." *Id.* at 226 citing *255 Broadway*, 9 F.3d 1000, 1004 (1st Cir.1993)(quoting *United States v. $67,220.00 in United States Currency*, 957 F. 2d 280, 285 (6th Cir.1992)). The Court then proceeded to analyze each piece of evidence.

With regard to claimants, Thomas and Johnson's, suspicious and nervous behavior, the Court stated "...claimants' apparent nervousness is of minimal probative value, given that many, if not most, individuals can become nervous and agitated when detained by police officers." *U.S. v. $10,700.00* at 226-227 citing *United States v. One Lot of United States Currency ($14,665)*, 33 F. Supp. 2d 47, 55 (D. Mass.1998)(noting that claimant's nervousness during interaction with law enforcement officers "is not an unreasonable response, regardless of the source and intended use of the currency").  In this case, there are no allegations that any of the Claimants were "nervous" at any time during the search of their home and seizure of their currencies. Therefore, the nervousness factor is not present in this case and should not be considered.

With regard to claimants, Thomas and Johnson's, evasive, inconsistent and conflicting statements about the purpose of their trip, the Court found that "...they do not indicate, more specifically, that claimants had engaged, or were about to engage, in a drug sale with this currency." *U.S. v. $10,700.00* at 227 citing *United States v. $5,000 in United*

*States Currency*, 40 F.3d 846, 850 (6th Cir.1994)(stating that claimant's evasive explanation of purpose of trip provided, at best, "inchoate and unparticularized suspicion"). In this case, there is no allegation that Claimants gave inconsistent statements about the ownership of Defendant Currencies.

With regard to claimants, Thomas and Johnson's, travel on Interstate 295, an alleged drug route according to the government, the Court concluded that it could not "credit the fact that the claimants were using a major interstate to be probative of drug trafficking." *Id*. at 228.   In this case, Defendant Currencies were seized from within Claimants COLORADO and SALGADO'S home not on a major interstate.

With regards to claimants, Thomas and Johnson's, residence in a "high drug area", the Court stated that this piece of evidence was "not probative of whether the money in claimants' possession was drug related because, unlike evidence linking claimants' actual place of residence to known previous narcotics activities or information concerning claimants' known associations with accused drug traffickers, the fact that claimants reside in a neighborhood that local law enforcement officers identified as a high drug activity area does not "meaningfully relate" to any specific conduct by these claimants that could be viewed as indicative of a narcotics nexus." *Id*. at 228.  In the instant case, the government does not allege that Claimants COLORADO and SALGADO reside in a high drug area.

With regard to the drug dog alert on claimants', Thomas and Johnson's, currency, the Court stated "...we attach no significance to the evidence derived from the post seizure dog sniff." *Id*. at 230. The Court did not attach any significance to the dog alert because it acknowledged that most of the United States currency in circulation is tainted with drug

residue. See *United States v. $506,231 in United States Currency*, 125 F. 3d 442, 453 (7th Cir.1997)(stating "[w]e are unwilling to take seriously the evidence of the post-seizure dog sniff... Even the Government admits that no one can place much stock in the results of dog sniffs..."); See also *United States v. $80,760.00 in United States Currency*, 781 F. Supp. 462, 475 (N.D.Tex. 1991)(stating "[t]here is some indication that residue from narcotics contaminates as much as 96% of the currency currently in circulation") and *Dirty Money*, United States Banker, October 1989, at 10 (discussing study by Lee Hearn, Chief Toxicologist for Florida's Dade County Medical Examiner's Office that 97% of bills around the country tested positive for cocaine; noting also that banks play a role in spreading the cocaine traces when tellers count and recount money, rubbing one bill against another). Therefore, the drug dog alert to Defendant Currencies in the instant case has little, if any, probative value in substantially connecting the defendant currency to the sale or purchase of illegal drugs.

With regard to the ION Scan Analysis conducted on claimants', Thomas and Johnson's, currency, the Court stated "we simply cannot accept the Government's conclusory statement that the test results show claimants' involvement in 'significant drug activity'. We conclude that the lack of credible information in the record concerning the ION Scan Analysis compels the conclusion that the results cannot be considered a factor weighing in the Government's favor in the overall probable cause analysis". *U.S. v. $10,700.00* at 231. In the instant case, the government does not allege that it conducted an ION Scan Analysis on Claimants' currencies.

With regard to the large amount of cash discovered in claimants', Thomas and

Johnson's, possession, the Court stated "[w]e recognized that the amount of money in claimants' possession and the method of packaging constitute probative circumstantial evidence that the currency itself is connected to illicit narcotics transactions. However, given the circumstances presented here, we do not view these factors as particularly probative of a narcotics nexus." *Id.* at 232; See also *U.S. v. $506,231*, 125 F.3d 442, 452 (stating none of the factors cited by the district court or the government concerning the amount of currency or the method of storing it have any bearing on the probable cause determination. The existence of any sum of money, standing alone, is not enough to establish probable cause to believe the money is forfeitable). Therefore, the fact that the Claimants had Defendant Currencies hidden in their home does not establish probable cause "substantially connecting" them to illegal activity.

With regard to the manner in which the claimants', Thomas and Johnson's, currency was rubber banded and concealed, the Court stated "[w]e agree with the observation by the United States Court of Appeals for the First Circuit that 'there is little significance in the fact that [claimants' money] was concealed, 'as '[f]ew people carry money, especially large sums, in any way other than 'concealed.'" *U.S. v. $10,700.00* at 233. Therefore, the fact that Claimants' currencies were hidden and secured in different areas of their home is not indicative of any illegal activity.

With regard to claimants', Thomas and Johnson, recent prior drug convictions, the Court stated "[h]ere, the prior convictions do not provide an adequate link between claimants' currency and illicit narcotics activities so as to establish probable cause for forfeiture." *U.S. v. $10,700.00* at 234. The Court then added:

"To be sure, claimant's prior convictions demonstrate that claimants could be

13

linked to the narcotics trade in the past, and in that sense, their criminal record is probative because it might give rise to a reasonable suspicion or 'hunch' that the currency in their possession was drug-related. But in our view, without additional credible evidence linking claimants, and thus, their currency, to drugs, claimants prior convictions do not provide a sufficient temporal link to the drug trade to support the forfeiture of claimants' currency. This result is appropriate where, as here, claimants are not charged with narcotics violations based on the events that led to the forfeiture, there is no credible evidence in the record that links claimants to any current drug activities, and the remaining evidence is not specific enough to the drug trade to provide the requisite connection or 'hook' to narcotics. *E.g.*, *$5,000*, 40 F.3d at 849-50 (finding that government lacked probable cause to forfeit currency, and discounting claimant's prior drug conviction, stating 'the fact that [claimant] pleaded guilty to state drug charges more than six years earlier is of little import here: a man's debt to society cannot be of infinite duration')."

*Id.* at 233.

In this case, there is no allegation that Claimants COLORADO and/or SALGADO have any criminal priors let alone for drug trafficking, money laundering, and/or dealing in stolen property.[10]

In sum the Court concluded that none of the factors relied on by the government to forfeit claimants', Thomas and Johnson's, property, standing alone, established probable cause. Even more so, the Court concluded that not even combining all of the factors together did the government establish probable cause substantially connecting the defendant currency to the drug trade. As such, the District Court's decree of forfeiture was

---

[10]It should be noted that Claimant COLORADO and SALGADO'S son, Andres Colorado ("Andres"), admitted ownership of the bags suspected to contain cocaine. See DE 1 page 4 ¶ 12. He was arrested for possession of cocaine and $3,500.00 in cash was seized from him at the time of arrest. He was prosecuted under State of Florida vs. Andres Colorado, Case No. F15-009793. However, the State Attorneys Office subsequently No Actioned that case before any formal charges were filed in court, and returned the cash seized from Andres.

reversed and the matter was remanded with directions that the District Court enter judgment in favor of the claimants. *Id*. at 234.

In the present case, the totality of the factors present in *U.S. v. $10,700.00* are not present and therefore, probable cause substantially connecting defendant currency to illegal activity should not be found. If the totality of the factors present in *U.S. vs. $10,700.00* were insufficient to establish probable cause, then this Honorable Court should also find that there is no probable cause in the present case when only some of the factors are present and the totality of circumstances do not justify finding probable cause.

Similarly, in *United States vs. Sixty-Eight Thousand Five Hundred Eighty Dollars ($68,580.00) in United States Currency*, 815 F. Supp. 1479 (M.D. Ga.1993), the government's attempt to forfeit currency that was seized during a traffic stop was denied because there was no probable cause substantially connecting the discovered currency to illegal narcotics activities.[11] In *U.S. v. $68,580.00*, Officer Billy Boney of the Macon Police Department stopped a car on Interstate 75 for a routine traffic infraction. The car was occupied by three individuals who were traveling from Chicago, Illinois, to West Palm Beach, Florida. The occupants of the car were Nikolaus Rombakis, Mary Robey, and a third person.

Officer Boney requested and obtained consent to search the car. During his search of the car, Officer Boney discovered a total of $68,580 in United States currency: $60,000

---

[11]Although the *$68,580.00* case was decided before the enactment of the Civil Asset Forfeiture Reform Act (CAFRA) of 2000, the probable cause analysis remains the same. The major changes introduced by CAFRA were to impose filing deadlines on all parties and to heighten the burden of proof for forfeiture on the government from a probable cause standard to by a preponderance of the evidence standard.

wrapped in a taped bundle and $4,260 in a plastic bag, both in the purse of Mary Robey. Officer Boney also discovered $4,320 in the pants pockets of Mr. Rombakis. The Officer then questioned Mr. Rombakis and Ms. Robey about the large sums of cash.

When Ms. Robey was questioned about the $64,260 in her purse, she claimed that the money had been given to her by her brother. Upon further questioning at the police station, Ms. Robey admitted that the money actually belonged to Mr. Rombakis and had not been given to her by her brother.

When Mr. Rombakis was questioned about the $68,580, he initially denied ownership of the $64,260 which was found in Ms. Robey's purse. Mr. Rombakis, however, did acknowledge that he was the owner of the $4,320 discovered in his pants pockets. After further questioning Mr. Rombakis later changed his story and acknowledged ownership of all the monies found. Thereafter, Mr. Rombakis filed a verified claim asserting ownership of the entire $68,580.

After further investigations, the government argued that the following factors created probable cause to support the belief that the defendant currency was exchanged for or intended to be exchanged for drugs: 1) Claimant-Rombakis was traveling on a known drug route, Interstate 75, and was nervous when questioned by Officer Boney; 2) Claimant-Rombakis was carrying a large sum of currency in small denomination bills and packaged in brown paper and masking tape; 3) Ms. Robey and Claimant-Rombakis offered inconsistent answers when questioned about the identity of the owner of the currency; 4) Testimony was offered by DEA agent Swift regarding Claimant-Rombakis prior arrest and convictions record.  In 1984, Claimant-Rombakis was arrested in a Chicago airport in possession of controlled substances (Tylenol 4 and Valium) and approximately $23,000

16

was seized from him. The case was later dismissed and the currency returned to him. In 1988, Claimant-Rombakis was convicted of passport fraud and sentenced to two years probation. Finally, Claimant-Rombakis was detained and questioned in 1988 in connection with the arrest of a friend for possession with intent to distribute cocaine; 5) Claimant-Rombakis tax returns indicate that his gross income was approximately $19,400 in 1987, $8,900 in 1988, $8,400 in 1989, and $10,900 in 1990; and 6) DEA agent Swift testified that a reliable informant told him that Claimant-Rombakis is involved in cocaine trafficking with his brother, Peter Rombakis. Specifically, the informant stated that in 1986 he witnessed Claimant-Rombakis deliver three kilos of cocaine to Peter Rombakis, who then distributed it in the Chicago area. The Court then conducted an analysis to determine if the aggregate of facts taken together established probable cause to substantially connect the defendant currency to the illegal drug trade. *Id.* at 1482.

After its analysis, the Court concluded that all of the factors were probative, some more than others, of illegal drug trafficking. The Court summed up the probative evidence by stating:

> "The evidence as a whole shows that the claimant was traveling on a known drug route and acted nervous, was carrying a large sum of currency in small denomination bills, lied about the identity of the owner of the currency, has a criminal record, and has a modest income according to his tax returns. In addition, an informant stated that claimant delivered three kilos of cocaine to his brother in 1986."

*Id.* at 1483.

Despite the facts offered by the government, the Court concluded that there was no probable cause substantially connecting defendant currency to the illegal drug trade and that it would be "speculating to say that the money was exchanged for or intended to be

17

exchanged for drugs." *Id.* at 1484. The Court emphasized that there was no evidence of drugs or drug paraphernalia found during the seizure and that the question "is whether the *$68,580.00 seized in this case* was exchanged for or intended to be exchanged for drugs." *Id.* at 1483. The Court answered the question with a resounding "No".

In the present case, the totality of the factors present in *U.S. v. $68,580.00* are not present and therefore, probable cause substantially connecting defendant currency to the illegal drug trade or any criminal activity should not be found. If the totality of the factors present in *U.S. vs. $68,580.00* were insufficient to establish probable cause, then this Honorable Court should conclude that there is no probable cause in the present case when only some of the factors are present and the totality of circumstances do not justify finding probable cause.

As outlined in the above discussed cases, the federal courts and Florida courts have consistently protected individuals from the deprivation of their monies by rendering decision after decision concluding that there was no probable cause substantially connecting the seized currencies to illegal activity. The following is a list of some of those cases:

**Federal Cases**:

-*United States vs. One Hundred and Thirty-Four Thousand, Seven Hundred and Fifty-Two Dollars United States Currency, More or Less*, 706 F. Supp. 1075 (S.D.N.Y. 1989) where the Court concluded that probable cause did not exist for neither drug-related forfeiture or gambling related forfeiture. In the drug-related forfeiture context, the Court found that probable cause did not exist even though four cocaine vials were found in the vicinity of the cash; driver testified that claimant had no knowledge of the vials, and

18

claimant had never been arrested for any offense involving controlled substances. In the gambling-related forfeiture context, the Court concluded that claimant's ten-year criminal history, generally suspicious circumstances under which money was discovered by police, and fact that claimant was compulsive bettor did not provide probable cause for gambling-related forfeiture of money, which was seized from car in which claimant was passenger; the government did not offer any proof that claimant had been involved with illegal gambling in the last decade;

-*United States vs. $506,231 in United States Currency,* 125 F.3d 442 (7th Cir. 1997) where the court concluded that there was no probable cause for drug related forfeiture despite an unusually large amount of cash being found in a pizzeria, the cash was in small bill denominations, the cash was unusually stored, no one identified a legitimate source for the cash or explained the reason for its unusual storage, three unregistered handguns were also found in the pizzeria, an informant had identified a large amount of cocaine being delivered to that pizzeria, and a trained drug dog identified traces of narcotics on the seized cash;

-*United States vs. $38,600.00 in U.S. Currency*, 784 F. 2d 694 (5th Cir.1986) where the Fifth Circuit found that evidence, including $38,600 discovered concealed under back seat in claimant's vehicle, pipe bearing marijuana residue, cigarette rolling papers, and claimant's evasiveness regarding destination and identity of owner of money, did not establish probable cause for belief that substantial connection existed between seized money and its exchange for a controlled substance so as to warrant forfeiture;

-*United States vs. $80,760.00 in U.S. Currency*, 781 F. Supp. 462 (N.D. Tex.1991) where the Court concluded that the government did not demonstrate probable cause for

forfeiture of currency recovered from airline passenger's luggage by showing that passengers exhibited characteristics of drug courier profile, and the narcotics detection dog alerted to scent of narcotics on currency; profile characteristics are of little value in forfeiture context without other persuasive evidence establishing requisite substantial connection and there was no evidence that passengers caused contamination of currency or that the government agents verified dog's alert;

- *United States vs. Six Hundred Thirty-Nine Thousand Five Hundred and Fifty-Eight Dollars ($639,558) in United States Currency*, 955 F. 2d 712 (D.C. 1992) where the Court affirmed the dismissal of a forfeiture action based on the government's unconstitutional seizure of claimant's cocaine laced currency;

- *United States vs. Fifty-Three Thousand Eighty-Two Dollars in United States Currency*, 985 F. 2d 245 (6th Cir.1993) where the Court found that seizure of claimant's cash was not justified pursuant to investigative detention; vague statements made by claimants as to source of cash on their person, even when viewed in conjunction with drug courier profile characteristics, provided only inchoate and unparticularized suspicion and were insufficient to serve as basis for reasonable articulable suspicion. The Court concluded that there was nothing substantially connecting the seized cash to illegal drug activity;

- *United States vs. $7,850.00 in U.S. Currency*, 7 F. 3d 1355 (8th Cir.1993) where the Court concluded that the government did not have probable cause to justify seizure of cash from its owner; although owner purchased airline ticket with cash, carried no luggage or identification, had been seen at airport on previous day and initially lied about that fact,

answered other questions evasively, and removed bundle of money from pocket and counted it for officers, only evidence officers had linking owner to possible involvement with drugs was Narcotics and Dangerous Drugs Information System (NADDIS) report;

-*United States vs. $30,060.00*, 39 F. 3d 1039 (9th Cir.1994) where the Court concluded that evidence that narcotics detection dog alerted to presence of controlled substance on money found in claimant's automobile during traffic stop, that money was packaged in $1,000 bundles and corresponded to price of two kilograms of cocaine, and that claimant gave false accounts of the money's source and his own employment record was insufficient to establish probable cause that the money was connected to drugs, as required to warrant forfeiture under narcotics forfeiture statute; claimant presented evidence that over 75% of the currency in the area was contaminated with residue of cocaine or other controlled substances, and the government presented no other evidence connecting money to drugs;

-*United States vs. $5,000 in U.S. Currency and $9,750 in U.S. Currency*, 40 F. 3d 846 (6th Cir.1994) where the Court concluded that the United States failed to establish probable cause to support forfeiture of $5,000 in currency carried on person of one claimant at airport and $9,750 carried in luggage of other claimant, though one claimant matched, to the extent of being well-dressed black man wearing glasses, drug courier description provided by anonymous caller, claimants had traveled to New York for single day and large amount of currency was found in bundles wrapped with rubber bands, narcotics detection dog alerted to the money, one claimant lied about the purpose of his trip, and other claimant had pleaded guilty to state drug charges more than six years previously;

21

-*L. Jones vs. United States Drug Enforcement Administration*, 819 F. Supp. 698 (M.D. Tenn. 1993) where the Court concluded that the government failed to demonstrate probable cause to believe that currency seized at airport from passenger bore substantial connection to drug offenses, which would support forfeiture; passenger's inadequate explanation for trip to source city for drugs with reservations giving him only short lay-over and rumor that passenger's associate was involved with drugs did no more than establish mere suspicion, which could not be relied upon for drug-related forfeiture.

**Florida Cases**:

-*Lamboy vs. Metro-Dade Police Department*, 575 So.2d 1317 (Fla. 3rd DCA 1991) where the Court concluded that there was insufficient showing of connection between $82,050 in United States currency discovered in hidden compartment in claimants' home and any drug offense to establish probable cause for forfeiture of money, despite large quantity of money discovered, manner in which it was packaged, claimant's admission that he was involved in cocaine transactions seven years earlier, and discovery of drugs in warehouse rented by claimant;

-*In re Forfeiture of $55,045.00 in U.S. Currency*, 753 So.2d 735 (Fla. 2nd DCA 2000) where the court concluded that there was no probable cause to forfeit $55,045 discovered in a rental vehicle even though trained narcotics K-9 alerted to rear tail light of vehicle, claimant and wife lied and gave conflicting statements regarding amount of currency they had in vehicle, and $55,045 was found packaged in bundles of approximately $1,000 with varying denominations in each bundle;

-*In re Forfeiture of $37,388.00 vs. DHSMV*, 571 So.2d 1377 (Fla. 1st DCA 1990)

22

where currency itself did not provide strong evidence of connection with drug trafficking, and police could not reasonably believe connection existed, where narcotics-sniffing dog did not alert on suitcase containing currency, where bulk of currency found in suitcase was not stacked or packaged in manner unique to drug dealers, and where money found on driver was not demonstrably linked to vial containing illicit drugs;

-*State of Florida DHSMV vs. Jones*, 780 So.2d 949 (Fla. 4th DCA 2001) Officer lacked probable cause to seize currency during automobile stop, where drug dog's alert to currency did not occur until after currency was removed from driver's possession and in police custody, marijuana seeds or residue under automobile seat was so insignificant that officer did not arrest driver for possession or try to retrieve particles, and driver's explanation regarding currency was not inconsistent.

## CONCLUSION

The totality of circumstances do not establish probable cause for the continued seizure of Defendant Currencies especially when Claimants, KURVAS SECRET by W and COLORADO, offered, at the time of seizure, all the business records which refute and rebut the allegations in this case. Unfortunately, the agents in this case, unlike the detectives in the State case, had no interest in reviewing said business documents.

Therefore, when deciding whether to grant the instant motion, this Court should keep in mind that the Civil Asset Forfeiture Reform Act (CAFRA) of 2000 was enacted, in part, as a reaction to the widespread government abuses in forfeiture proceedings and the increasing judicial criticisms of the government's conduct in such proceedings. See *U.S. v. $10,700.00*, 258 F. 3d at 234 quoting *U.S. v. $506,231*, 125 F. 3d at 453-54 (stating

"[n]*othing* ties this money to any narcotics activities that the government knew about or charged, or to any crime that was occurring when the government attempted to seize the money ... We reiterate that the government may not seize money, even a half a million dollars, based on its bare assumption that most people do not have huge sums of money lying about, and if they do, they must be involved in narcotics trafficking or some other sinister activity. Moreover, the government may not require explanations for the existence of large quantities of money absent its ability to establish a valid narcotics nexus.").

Despite the enactment of CAFRA, the government continues to abuse its forfeiture powers. The government, having nothing more than mere suspicion, seizes property, covers its' eyes (thereby withholding exculpatory and mitigating evidence from the courts), and then goes on fishing expeditions to try and justify its seizure and attempted forfeiture of the seized properties. This practice goes against Congress' intentions when it enacted CAFRA and against the Framers intentions when they enacted the Fourth Amendment of the United States Constitution which prohibits the seizure (arrest) of property without probable cause.


**REQUESTED RELIEF**

WHEREFORE, Claimants respectfully request that this Court:

a) dismiss the government's forfeiture Complaint;

b) enter an order returning Claimants' currencies plus interest since the date of seizure, May 11, 2015, by check made payable to Berrio & Berrio, P.A. - Trust Account;

c) enter an order awarding Claimants attorneys fees and costs for having to defend this forfeiture lawsuit; and

d) enter any other orders it deems equitable and appropriate under the circumstances.

Respectfully submitted,

By: S/Juan D. Berrio
Fla Bar No. 0236070

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed with the Clerk of Court and served on all counsel of records via CM/ECF on this 2nd day of December, 2015.

By: S/Juan D. Berrio
Fla. Bar No. 0236070

Berrio & Berrio, P.A.
2333 Brickell Avenue, Suite A-1
Miami, Florida 33129
Telephone (305)358-0940
Facsimile (305)359-9844
Email: jdberrio@hotmail.com