AO 109 (Rev. 11/13) Warrant to Seize Property Subject to Forfeiture

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | |
|---|---|
| In the Matter of the Seizure of<br>*(Briefly describe the property to be seized)*<br>One Cashier's Check for $30,000 and one<br>Cashier's Check for $101,629.59 in U.S. Currency | ) ) ) Case No. 15-2654-SIMONTON ) ) ) |

## WARRANT TO SEIZE PROPERTY SUBJECT TO FORFEITURE

To: Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests that certain property located in the _____Southern_____ District of _____Florida_____ be seized as being subject to forfeiture to the United States of America. The property is described as follows:

see Attachment A and B

I find that the affidavit(s) and any recorded testimony establish probable cause to seize the property.

**YOU ARE COMMANDED** to execute this warrant and seize the property on or before _____05/26/2015  4:28 pm_____
(not to exceed 14 days)

☒ in the daytime 6:00 a.m. to 10:00 p.m.  ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must also give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

An officer present during the execution of the warrant must prepare, as required by law, an inventory of any property seized and the officer executing the warrant must promptly return this warrant and a copy of the inventory to
_the Magistrate Judge on duty_.
(United States Magistrate Judge)

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
  ☐ for _____ days (not to exceed 30)   ☐ until, the facts justifying, the later specific date of _____.

Date and time issued: __5/12/15  4:28 pm__     _Andrea M. Simonton_
                                                *Judge's signature*

City and state: __Miami, Florida__     U.S. Magistrate Judge Andrea M. Simonton
                                        *Printed name and title*

**EXHIBIT B**

ATTACHMENT A

DESCRIPTION CASHIER'S CHECK TO BE SEIZED

The check is drawn up on Chase Bank. It is check number 1178710368 issued on April 25, 2015 and made payable to Wilson COLORADO. The amount of the cashier's check is $30,000.00.

---

**CHASE**  **CASHIER'S CHECK**  1178710368  25-3  440

Date 04/25/2015   Void after 7 years

Remitter: WILSON COLORADO

Pay To The Order Of: WILSON COLORADO

Pay: THIRTY THOUSAND DOLLARS AND 00 CENTS   $** 30,000.00 **

Drawer: JPMORGAN CHASE BANK, N.A.

Senior Vice President
JPMorgan Chase Bank, N.A.
Columbus, OH

Memo: _____
Note: For information only. Comment has no effect on bank's payment.

ATTACHMENT B

DESCRIPTION CASHIER'S CHECK TO BE SEIZED

The check is drawn up on Well Fargo Bank, N.A. It is check number 6648201039 issued on April 25, 2015 and made payable to Wilson COLORADO. The amount of the cashier's check is $101,629.59.

---

**CASHIER'S CHECK**

SERIAL #: 6648201039
ACCOUNT #: 4861-508935

0066452   11-24
Office AU #   1210(8)

Remitter: WILSON COLORADO
Purchaser: WILSON COLORADO
Purchaser Account: 5312096414
Operator I.D.: u401959   fl007375
Funding Source: Electronic Items(s), Paper Items(s)

PAY TO THE ORDER OF   ***WILSON COLORADO***

April 25, 2015

***One hundred one thousand six hundred twenty-nine dollars and 59 cents***   **$101,629.59**

Payee Address:
Memo:

WELLS FARGO BANK, N.A.
16301 SW 88TH ST
MIAMI, FL 33196
FOR INQUIRIES CALL (480) 394-3122

NOTICE TO PURCHASER – IF THIS INSTRUMENT IS LOST, STOLEN OR DESTROYED, YOU MAY REQUEST CANCELLATION AND REISSUANCE. AS A CONDITION TO CANCELLATION AND REISSUANCE, WELLS FARGO BANK MAY IMPOSE A FEE AND REQUIRE AN INDEMNITY AGREEMENT AND BOND.

VOID IF OVER US $ 101,629.59

NON-NEGOTIABLE

**Purchaser Copy**

---

**CASHIER'S CHECK**   6648201039

0066452   11-24
Office AU #   1210(8)

Remitter: WILSON COLORADO
Operator I.D.: u401959   fl007375

April 25, 2015

PAY TO THE ORDER OF   ***WILSON COLORADO***

***One hundred one thousand six hundred twenty-nine dollars and 59 cents***   **$101,629.59**

Payee Address:
Memo:

WELLS FARGO BANK, N.A.
16301 SW 88TH ST
MIAMI, FL 33196
FOR INQUIRIES CALL (480) 394-3122

AUTHORIZED SIGNATURE   AUTHORIZED SIGNATURE

VOID IF OVER US $ 101,629.59

⑆6648201039⑆ ⑉121000248⑉ 4861 508935⑉

AO 108 (Rev. 06/09) Application for a Warrant to Seize Property Subject to Forfeiture

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

In the Matter of the Seizure of  )
(Briefly describe the property to be seized)  )
One Cashier's Check for $30,000 and one  )   Case No. 15-2654-SIMONTON
Cashier's Check for $101,629.59 in U.S. Currency  )
  )

## APPLICATION FOR A WARRANT
## TO SEIZE PROPERTY SUBJECT TO FORFEITURE

I, a federal law enforcement officer or attorney for the government, request a seizure warrant and state under penalty of perjury that I have reason to believe that the following property in the __Southern__ District of __Florida__ is subject to forfeiture to the United States of America under __21__ U.S.C. § __841 and 853__ (describe the property):

See attached A and B

The application is based on these facts:

See Attached Affidavit

☑ Continued on the attached sheet.

_____
Applicant's signature

Kimako W. Finey, Special Agent  DEA
Printed name and title

Sworn to before me and signed in my presence.

Date: 5/12/15

_____
Judge's signature

City and state: Miami, Florida

U.S. Magistrate Judge Andrea M. Simonton
Printed name and title

AFFIDAVIT

I, Kimako W. Finey, Special Agent of the Drug Enforcement Administration, being duly sworn, state the following:

1. I am employed as a Special Agent with the Drug Enforcement Administration (DEA) United States Department of Justice and have been so employed since January 2010. As such, I am an investigative or law enforcement within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516(1). As a special agent with the DEA, I have participated in numerous narcotics investigations involving physical and electronic surveillance; execution of search and arrest warrants; the control and administration of confidential sources; international drug importations; and domestic drug distribution organizations. I have participated in the arrest and subsequent prosecution of numerous drug traffickers. I also have spoken on numerous occasions with informants, suspects, and experienced narcotics investigators concerning the manner, means, methods, and practices that drug traffickers use to further the operation of their drug trafficking organizations and the most effective methods of investigating and dismantling drug trafficking organizations. I am currently assigned to investigate drug trafficking organizations as a member of the High Intensity Drug Trafficking Area (HIDTA) Task Force in Miami, Florida. HIDTA is an investigative entity that is comprised of law enforcement officers from various federal, state, and local law enforcement agencies who work together in a cooperative relationship.

2. This affidavit is submitted in support of an application for the issuance of a seizure warrant for two cashier's checks (THE TARGET CHECKS) more fully described in attachment

A and attachment B. The information set forth in this affidavit is based upon information relayed to me by other federal and state law enforcement officers, and upon my own observations during the course of this investigation. The TARGET CHECKS are believed to be proceeds of drug trafficking in violation of 21 United States Code, Section 841.

3. Because this affidavit is being submitted for the limited purpose of securing a seizure warrant, it does not contain all of the information known to me and/or other law enforcement officers involved in this investigation.

4. On or about April 30, 2015, a DEA cooperating source (hereafter referred to as CS1) told agents that Wilson Oswaldo COLORADO, a Colombian male from Medellin, was a cocaine distributor and money launderer currently residing in Miami, Florida[1]. CS1 told agents that COLORADO was in current negotiations with unidentified Mexican cartel members to import kilogram quantities of cocaine from Mexico into the United States and Europe. CS1 told agents that from October 2014 to the present, COLORADO had imported kilogram quantities cocaine into Spain where he had distributed them, thus obtaining large quantities of bulk currency that were currently in Miami, Florida. CS1 advised agents that COLORADO utilizes several residences throughout south Florida which are maintained as stash house locations utilized to store bulk currency and narcotics, and that one such residence was occupied by Tatiana Alejandra NARVAEZ. Agents located the address given by CS1 and determined from a neighborhood investigation that a man frequently visited the female resident.

---

[1] The CS is very reliable and has been with the DEA since 1993. He/she has provided information to agents of the DEA in the past which has proven to be accurate and credible and has led to several arrests and seizures. The affiant has personally worked on three investigations in which this CS provided critical information that led to successful prosecutions.

5. On May 11, 2015, agents interviewed NARVAEZ at the location, which was her residence, during a consensual encounter. NARVAEZ told agents that she was in a personal and business relationship with COLORADO. NARVAEZ told agents that she worked for a south Florida corset business and had supplied COLORADO with goods and services in order for him to facilitate his current business. NARVAEZ did not know the name of COLORADO's business. NARVAEZ told agents that she was recently fired by her current employer due to an active criminal investigation in which she is alleged to have been supplying COLORADO with stolen corsets from the business. NARVAEZ provided agents with verbal permission to search her residence. No illegal items were observed by agents at her residence. NARVAEZ then provided agents with an alternate address for COLORADO.

6. Later on this same date, agents conducted mobile and stationary surveillance at the alternate address which NARVAEZ gave as the residence of COLORADO. Agents approached the residence and identified Miladis SALGADO as the current owner. SALGADO explained that she was the ex-wife of COLORADO: she told agents that she allows COLORADO to live with her while he is in the United States, and provided agents with verbal and written permission to enter and search her residence.

7. Agents encountered COLORADO and his son Andres Felipe COLORADO as they entered the residence: they did not offer any resistance to the consent search. The search revealed the following:

    a. Signs that narcotics may have been discarded utilizing a bathroom toilet in the upstairs portion of the residence: a food saver type bag and napkin containing the residue of a green leafy substance (suspected marijuana) was in the trash can on the side of the aforementioned toilet.

b. Two to three small bags of a white powdery substance (suspected cocaine) and a large marijuana bong from within the garage area which had been converted into a bedroom. This room appeared to be utilized by COLORADO and his son Andres Felipe COLORADO. Andres COLORADO admitted to ownership of the cocaine and was arrested by a detective of the Miami Dade Police Department assigned to DEA as a task force agent.

c. A heat sealer in the converted bedroom.

d. A kilogram press in the rear of the residence.

e. A pile of United States currency from an upstairs bedroom closet in a room determined to be SALGADO's. Currency certified canine "Spock" was called upon to conduct a clean air search of the residence. According to the canine handler "Spock" displayed a noticeable change in behavior in the area of the master bedroom closet and displayed a passive alert for the detection of currency. This room appeared to be utilized by SALGADO as photographs of her were displayed throughout the room and mail addressed to her was observed. Agents found the currency after a search of the closet which contained woman's clothing and shoes on a shelving system. At the rear portion of one of the shelves agents discovered a loose board. Once the board was adjusted the currency spilled out from this area. Agents recovered the United States currency and an envelope containing two cashier's checks (THE TARGET CHECKS). The currency was mostly in $100 and $20 bills[2]. Drug certified canine "Nina" was called upon to conduct a clean air search around the currency. According to the canine handler, "Nina" displayed a noticeable change in behavior around the money and displayed a passive alert to the currency. During later interview SALGADO told agents that she had no knowledge of the currency hidden in the closet. During a later interview with COLORADO he told agents that the currency was his, however could not provide an explanation as to why he hid it under the closet shelving system.

f. Agents observed and later recovered two bundles of money bound by rubber bands in a room determined to be that of a juvenile female that occupied the residence. The currency appears to be entirely $100 bills. This currency was observed under a two drawer night stand near the juvenile female's bed. Nina was called upon to conduct a clean air search around the currency. According to the canine handler, Nina displayed a noticeable change in behavior around the money and displayed a passive alert to the currency. During a later interview, SALGADO told agents that she had no knowledge of the currency being under the night stand. During a later interview with COLORADO he told agents that the currency belonged to him, however could not provide an explanation on why he hid it under the night stand.

---

[2] By policy, DEA agents do not count currency at the time of seizure.

4

8. Agents observed and photographed pages from the 2013 and 2014 joint tax return completed by SALGADO and COLORADO. In 2013 SALGADO and COLORADO claimed $47,847 in total wages, tips and earnings. In 2014, SALGADO and COLORADO claimed $42,443 in total wages, tips and earnings. In a subsequent interview, COLORADO told agents that the seized currency was from his corset business and that the corsets and cosmetics the agents observed in the garage were goods to be sold as part of his business. When questioned about the business, COLORADO would not provide agents with the name of the business, but claimed that he could provide records, ledges, etc. A check with the Florida Department of State revealed that no business was, or ever had been registered under his name.

9. A search of DEA records reveals that COLORADO has been the subject of several DEA investigations dating back to 1993. In 1994, COLORADO met with a DEA agent acting in an undercover capacity (UC) to discuss the delivery of narcotics proceeds to be laundered in Corona Queens, New York. Later in 1994, he delivered approximately $300,000 to a UC in Astoria, New York. In 2008, COLORADO was involved in an investigation in which $100,000 was delivered to agents in Hialeah, Florida. The currency was delivered in a vehicle registered to COLORADO by one of his associates.

10. Based on the information contained in this affidavit, your Affiant believes that probable cause exists to believe that TARGET CHECKS represent proceeds of narcotics trafficking in violation of Title 21 U.S.C. § 841(a) and Title 21 U.S.C. § 846 and are subject to seizure.

11. WHEREFORE, your affiant respectfully requests that the Court issue a seizure warrant commanding your affiant or any other duly authorized law enforcement official to seize the Certified Checks described in attachment A and B, and to seize the funds represented thereof upon presentation to the issuing banks, Wells-Fargo and J.P. Morgan Chase.

FURTHER AFFIANT SAYETH NAUGHT.

Kimako W. Finey
Special Agent
Drug Enforcement Administration

*Sworn to and subscribed before me in Miami, Florida on 5/12/15.*

*Andrea M. Simonton*
*US Magistrate Judge*

**EXHIBIT B**

## ATTACHMENT A

## DESCRIPTION CASHIER'S CHECK TO BE SEIZED

The check is drawn up on Chase Bank. It is check number 1178710368 issued on April 25, 2015 and made payable to Wilson COLORADO. The amount of the cashier's check is $30,000.00.

---

**CHASE**

**CASHIER'S CHECK**

1178710368  25-3 / 440

Date: 04/25/2015    Void after 7 years

Remitter: WILSON COLORADO

Pay To The Order Of: WILSON COLORADO

Pay: THIRTY THOUSAND DOLLARS AND 00 CENTS          $** 30,000.00 **

Drawer: JPMORGAN CHASE BANK, N.A.

Senior Vice President
JPMorgan Chase Bank, N.A.
Columbus, OH

Memo: _____
Note: For information only. Comment has no effect on bank's payment.

⑈1178710368⑈ ⑆044000037⑆ 758661325⑈

ATTACHMENT B

DESCRIPTION CASHIER'S CHECK TO BE SEIZED

The check is drawn up on Well Fargo Bank, N.A. It is check number 6648201039 issued on April 25, 2015 and made payable to Wilson COLORADO. The amount of the cashier's check is $101,629.59.

**CASHIER'S CHECK**

SERIAL #: 6648201039
ACCOUNT #: 4861-508935

Office AU #: 0066452  11-24  1210(8)
Remitter: WILSON COLORADO
Purchaser: WILSON COLORADO
Purchaser Account: 63120966414
Operator I.D.: u401959  R007375
Funding Source: Electronic Items(s) Paper Items(s)

PAY TO THE ORDER OF   ***WILSON COLORADO***

April 25, 2015

***One hundred one thousand six hundred twenty-nine dollars and 59 cents***    **$101,629.59**

Payee Address:
Memo:

WELLS FARGO BANK, N.A.
16301 SW 88TH ST
MIAMI, FL 33196
FOR INQUIRIES CALL (480) 394-3122

NOTICE TO PURCHASER – IF THIS INSTRUMENT IS LOST, STOLEN OR DESTROYED, YOU MAY REQUEST CANCELLATION AND REISSUANCE. AS A CONDITION TO CANCELLATION AND REISSUANCE, WELLS FARGO BANK MAY IMPOSE A FEE AND REQUIRE AN INDEMNITY AGREEMENT AND BOND.

VOID IF OVER US $ 101,629.59

NON-NEGOTIABLE

**Purchaser Copy**

---

**CASHIER'S CHECK**    6648201039

Office AU #: 0066452  11-24  1210(8)
Remitter: WILSON COLORADO
Operator I.D.: u401959  R007375

April 25, 2015

PAY TO THE ORDER OF   ***WILSON COLORADO***

***One hundred one thousand six hundred twenty-nine dollars and 59 cents***    **$101,629.59**

Payee Address:
Memo:

WELLS FARGO BANK, N.A.
16301 SW 88TH ST
MIAMI, FL 33196
FOR INQUIRIES CALL (480) 394-3122

AUTHORIZED SIGNATURE    AUTHORIZED SIGNATURE

VOID IF OVER US $ 101,629.59

⑆6648201039⑆ ⑈121000248⑈ 4861 508935⑈