UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 15-CV-23616-GAYLES/Turnoff

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

$70,670.00 IN U.S. CURRENCY, *et al.*,

    Defendants.

_____/

### REPORT AND RECOMMENDATION

**THIS CAUSE** is before the Court upon Plaintiff United States' Motion for Order Compelling Putative Claimants to Show Cause Why Their Claims Should Not Be Stricken. (ECF No. 27). This matter was referred to the undersigned by the Honorable Darrin P. Gayles, United States District Court Judge for the Southern District of Florida. (ECF No. 65). A hearing on this matter was held before the undersigned on November 15, 2016. (ECF No. 88). The Court has considered the written and oral arguments, the applicable law, the record, as is otherwise duly advised in the premises.

### Summary Background

The government filed this complaint for forfeiture *in rem*, on September 28, 2015, seeking to forfeit cash and cashier's checks totaling $206,299.59, in U.S. currency, allegedly derived from proceeds of narcotics trafficking and/or the interstate transportation of stolen property and/or traceable to money laundering transactions, allegedly attributable to Wilson Oswald Colorado-Echeverry ("Colorado"). (ECF No. 1). Colorado is the owner of Kurvas Secret by W, Inc. ("Kurvas

Secret").

On May 11, 2015, law enforcement agents searched the home of Colorado's ex-wife, Miladis Salgado ("Salgado"). During the search, a currency detection canine alerted to the presence of cash in the master bedroom closet totaling $15,070.00, as well as $55,600.00 found under a night stand. In total, they seized about $70,670.00 in cash. They also found in the master bedroom closet two cashier's checks payable to Colorado, both dated April 25, 2015: from Wells Fargo in the amount of $101,629.59, and from Chase in the amount of $30,000.00.

At the time of their seizure, Colorado claimed ownership of all Defendants In Rem, while Salgado told agents that she did not know that cash and cashier's checks were hidden in her closet. On May 12, 2015, Magistrate Judge Andrea Simonton issued seizure warrants with respect to the cashier's checks. The warrants were executed on May 13, 2015.

On June 17, 2015, the Drug Enforcement Administration ("DEA") sent direct notice to Colorado, Salgado, their juvenile daughter, Colorado's son, and Kurvas Secret, initiating administrative forfeiture proceedings against Defendants In Rem. On July 2, 2015, Colorado filed, under penalty of perjury, administrative claims to each of the Defendants In Rem, including Defendant Cash, asserting that he owned the property.

On September 28, 2015, Plaintiff filed a Verified Complaint for Forfeiture In Rem, alleging that Defendants In Rem were subject to forfeiture. (ECF No. 1). On November 3, 2015, after receiving direct notice, Claimants filed a Notice of Filing Verified Claims. (ECF No. 8). In the Verified Claims, Colorado and Kurvas Secret claimed ownership of $112,000.00 in U.S. currency, and the two cashier's checks taken from the property. (ECF No. 8-1). Salgado claimed that the $15,000.00 in U.S. currency belonged to her, while other currency and cashier's checks belonged

to Colorado. (ECF No. 8-2).

On December 2, 2015, in lieu of filing their answer(s) to the Verified Complaint, Claimants filed a Motion To Dismiss Forfeiture Complaint for Failure To Establish Probable Cause for Seizure arguing that the government had no probable cause for the seizure and attempted forfeiture of the currencies. (ECF No. 13). On September 20, 2016, Judge Gayles denied the motion to dismiss finding that the verified complaint alleged sufficient facts to support a reasonable belief that Plaintiff would be able to meet its burden at trial and prove that the seized currencies were subject to forfeiture. (ECF No. 63). On December 3, 2015, the government propounded special interrogatories on Claimants, which Judge Gayles ordered them to answer. (ECF No. 21).

On February 3, 2016, Claimants filed a Notice of Filing Amended Verified Claims. (ECF No. 22). In the Amended Claims, Colorado and Kurvas Secret claimed an ownership and possessory interest in two cashier's checks, $55,600.00 in cash found in a night stand, and $42,000.00 in cash that disappeared during the search, which represented "life savings, earnings, and working capital" for Kurvas Secret. (ECF No. 22-1). Colorado also claimed a possessory interest in $15,070.00 in cash found in the master bedroom closet, which belonged to Claimant Salgado. Salgado claimed a possessory interest in the above-noted Defendants In Rem and an ownership and possessory interest in the $15,070.00 in cash, which represented "earnings, savings . . . meant for my daughter's fifteen (15) year old birthday party." (ECF No. 22-2).

Claimants answered Plaintiff's special interrogatories, and then provided supplemental answers along with document production. In the answers, Colorado reiterated his claim of an ownership and possessory interest in the Defendants In Rem, while also reiterating the source of these funds. (ECF No. 28-1). In the supplemental answers, Colorado and Kurvas Secret provided

more detailed answers regarding the source of the cashier's checks, as well as the cash seized by the government. Salgado explained that the $15,070.00 in cash, over which she claimed an ownership interest, derived from her employment at Duty Free Americas, rental income, and other miscellaneous receipts accumulated over a period of four years, which the government disputed.

The government seeks the entry of an order to show cause why Claimants' claims should not be stricken for vagueness, pursuant to the Supplemental Rules for Admiralty and Maritime Claims and Asset Forfeiture.

## Legal Standard

Civil forfeiture actions are governed by the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, as well as the Federal Rules of Civil Procedure. See Supp. R. G(1). "A person who asserts an interest in the defendant property may contest the forfeiture by filing a claim in the court where the action is pending." Supp. R. G(5)(a)(i). Such claim must "identify the specific property claimed," "identify the claimant and state the claimant's interest in the property," and, if the claim is filed by a person claiming to be a bailee, "identify the bailor, and if filed on the bailor's behalf must state the authority to do so." Supp. R. G(5)(A) (i)(A-B), G(5)(A)(iii). "As an in *rem* proceeding, a civil forfeiture action is unlike most other civil actions in that the defendant is the property subject to forfeiture and, as such, it is the claimant, not the plaintiff, who has the burden to demonstrate standing by a preponderance of the evidence." United States v. All Funds in the Account of Prop. Futures, Inc., 820 F. Supp. 2d 1305, 1325 (S.D. Fla. 2011), aff'd *sub nom*. When a claim fails to meet the requirements of the Supplemental Rules, or the claimant otherwise lacks standing, the government may move to strike the claim. Supp. R. G(8)(c) (i), G(8)(c)(ii)(B).

A claimant in a civil forfeiture proceeding bears the threshold burden of establishing both

Article III standing and statutory standing with respect to each claimed defendant property. United States v. $38,000.00 in U.S. Currency, 816 F.2d 1538, 1543 (11th Cir. 1987); see also United States v. ADT Sec. Servs., Inc., 522 Fed. App'x 480, 489 (11th Cir. 2013) (*per curiam*). "The issue of standing is subject to adversarial testing under Supplemental Rule G(6)(a), which gives the government the right to question the claimant regarding 'the claimant's identity and relationship to the defendant property,' and to 'gather information that bears on the claimant's standing.'" United States v. $133,420.00 in U.S. Currency, 672 F.3d 629, 642 (9th Cir. 2012) (citing Supp. R. G(6)(a) & advisory committee's note (subdivision (6))). To that end, Supplemental Rule G(6) confers on the government the authority to serve special interrogatories on putative claimants in forfeiture proceedings "limited to the claimant's identity and relationship to the defendant property without the court's leave at any time after the claim is filed and before discovery is closed." Supp. R. G(6)(a).

As noted, Claimants filed their Verified Claims to the Defendants In Rem. (ECF No. 8). The government then served special interrogatories, which Claimants were ordered to answer. (ECF No. 21). Thereafter, Claimants served Amended Verified Claims to the Defendants In Rem. (ECF No. 22). The government contested whether Claimants had satisfied the pleading requirements of the Supplemental Rules, arguing that the claims, as filed, failed to sufficiently identify their respective interests in the Defendants In Rem. The government acknowledged that Colorado and Salgado had clarified their interests by stating that the $15,070 was owned by Salgado, yet in the amended claims, they still demanded the return of "all property seized from our home on 5/11/15."

### A. Article III Standing

To establish standing under Article III, a "claimant must demonstrate sufficient interest in the property such that there is a 'case or controversy' capable of adjudication by federal courts."

United States v. One Parcel of Real Prop. Located at 19127 SW 65th St., Pembroke Pines, Broward Cty., Fla., No. 12-61226-CIV, 2013 WL 1023506, at *2 (S.D. Fla. Mar. 14, 2013). Article III standing can be satisfied by showing "a colorable interest in the property," U.S. v. 5208 Los Franciscos Way, Los Angeles, Cal., 385 F.3d 1187, 1191 (9th Cir. 2004), including an ownership or possessory interest. United States v. $191,910.00, 16 F.3d 1051, 1057 (9th Cir. 1994). "Ownership is not required" to confer standing. Via Mat Int'l S. Am. Ltd. v. United States, 446 F.3d 1258, 1262 (11th Cir. 2006). Thus, "non-owners, such as bailees or those with possessory interests can also have injuries resulting from the seizure of property that are sufficient to establish standing." Id.

This burden is "not rigorous," because the claimant "need not prove the underlying merits of the claim," but rather "need only show a colorable interest in the property, redressable, at least in part, by a return of the property." United States v. One Lincoln Navigator 1998, 328 F.3d 1011, 1013 (8th Cir. 2003), cited with approval in United States v. One 1990 Beechcraft 1900 C Twin Engine Turbo-Prop Aircraft, 619 F.3d 1275, 1277, n.3 (11th Cir. 2010); see also Via Mat Int'l S. Am., 446 F.3d at 1262 ("At the heart of Article III standing is the existence of an injury, not ownership.").

In evaluating a particular ownership interest, courts look first to state law to determine what interest the claimant has in the property to be forfeited and then to federal law to determine whether the particular interest is forfeitable under the relevant statute. See United States v. One 1990 Beechcraft 1900 C Twin Engine Turbo–Prop Aircraft, 659 F.Supp.2d 1260, 1267 (S.D. Fla. 2009) (state law determines ownership interest for purposes of 18 U.S.C. § 983(d)(6)(A), but exceptions listed in § 983(d)(6)(B) are determined independent of state law) (citations omitted); United States v. Fleet, 498 F.3d 1225, 1231 (11th Cir. 2007) ( "While state law defines the property interests a

defendant has, federal law determines whether those property interests are forfeitable in the commission of a federal crime."); See also United States v. Lot 5, Fox Grove, Alachua County, Florida, 23 F.3d 359, 361 (11th Cir. 1994) (explaining that federal statute governing civil forfeiture supersedes Florida state homestead law when congressional purpose clearly and wholly expressed).

## B. Statutory Standing

To establish statutory standing, a claimant must comply with certain procedural requirements under the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture ("Supplemental Rules") and federal forfeiture statutes. United States v. $12,126.00 in U.S. Currency, 337 Fed. App'x 818, 819 (11th Cir. 2009). For example, Rule G(5) of the Supplemental Rules, requires claimants "to file both a verified claim asserting their interest in the seized property and an answer to the government's forfeiture complaint." Id.

As with Article III standing, "whether [the Claimant] is an 'owner' is," likewise, "not germane to the issue of whether [he] has statutory standing to contest the forfeiture." U.S. v. Assets Described in Attachment A to the Verified Complaint Forfeiture In Rem, 799 F. Supp. 2d 1319, 1323 (M.D. Fla. 2011). Satisfaction of statutory standing requires compliance with 18 U.S.C. § 983(a)(4) and the Supplemental Rules. See $38,000.00, 816 F.2d at 1545. Namely, these require that a claimant: (1) file a claim in the court where the action is pending (see Supp. R. G(5)(a)); (2) identify the specific property claimed; (3) identify the claimant; (4) state the claimant's interest in the property; (5) sign the claim under penalty of perjury; (5) serve the claim on the government's attorney; and (6) file an answer to the United States' complaint or a Rule 12 motion within twenty-one days of filing a claim. See Supp. R. G(5).

## Discussion

According to the government, Claimants had asserted vague claims putting their standing in dispute. The government argued that Claimants had refused to fully explain the circumstances surrounding their acquisition of the Defendants In Rem either by withholding information regarding the identity and sources of the Defendants In Rem and/or by providing contradictory answers regarding ownership.

Colorado had previously claimed ownership of all the Defendants In Rem, including funds now claimed by Salgado. Thus, the government argued that Claimants had asserted overlapping possessory interests in the Defendants In Rem without detailing the circumstances surrounding possession of same. Moreover, the government argued that Colorado had failed to distinguish his individual interest in the Defendants In Rem from that of Kurvas Secret. Colorado explained, under penalty of perjury, that Kurvas Secret was wholly owned and operated by him. Colorado stated that he had withdrawn the monies seized from the house due to a pending law suit against him. He provided business and banking documentation pertaining to the source of the funds, such as purchase orders, invoices, receipts, shipping documents, etc.

According to the government, Salgado had stated originally that she had no knowledge of the monies hidden in the closet. Under penalty of perjury, Salgado later denied disclaiming knowledge or ownership of the $15,070. The government argued that she lacked standing, nevertheless, because she did not have the income to substantiate her claim. At her deposition, Salgado testified how she had obtained the money over which she claimed an ownership interest from different sources. She also provided documentation regarding her employment, as well as personal banking documents showing cash withdrawals.

Page 8 of 10

As the Eleventh Circuit recently noted, "standing" and "ownership" are distinct concepts in civil forfeiture law. See Beechcraft, 619 F.3d at 1277, n. 3. Although they are two separate issues pertaining to different stages of the forfeiture case, they are sometimes conflated in reported decisions. See Stefan D. Cassella, Asset Forfeiture Law in the United States 332 (2007) ("Standing and ownership are separate concepts that are often confused in the case law.... [S]tanding and ownership come into play at different stages in the civil forfeiture case and are governed by different bodies of law."). Recently, in United States v. Real Property Located at 246 Main Street, Dansville, Livingston County, New York, the court noted that the government was confusing the concepts of "standing" with "ownership." 118 F. Supp. 3d 1310, 1318 (M.D. Fla. 2015). "While it is true that a claimant must demonstrate both Article III standing and statutory standing in order to contest a civil forfeiture action, standing and ownership come into play at different stages in civil forfeiture cases and require different showings." (Inner citations omitted) Id. In that case, the court was not persuaded by the government's argument that the claimant lacked standing because he could not show that he fit the statutory definition of "owner." The court further noted the Eleventh Circuit's previous statement that "[a] claimant need not own the property in order to have standing to contest its forfeiture; a lesser property interest, such as a possessory interest, is sufficient for standing." (Citations omitted) 118 F.Supp.3d at 1318. Based thereon, the court found that the claimant had satisfied the "undemanding standard" to establish standing. 118 F.Supp.3d at 1319.

In this case, the undersigned finds that the Article III standing requirements have been met by Claimants through their Amended Verified Claims. They have set forth a colorable interest in the Defendants In Rem sufficient to establish a case or controversy capable of adjudication. Moreover, upon review, the requirements of statutory standing have also been satisfied. As discussed herein,

the issue of ownership is not germane to the issue of standing, as they become relevant at different stages of forfeiture proceedings. Indeed, Claimants need not demonstrate ownership over the claimed property in order to have standing to contest forfeiture of same. As noted, the standing threshold is not a rigorous burden. The monies were taken from Salgado's home. Salgado, Colorado, and Kurvas Secret have filed their claims setting forth their respective interests in the Defendants In Rem. They have also provided discovery and interrogatory answers. Thus, Claimants have established a colorable interest in the seized property sufficient to establish standing.

## Recommendation

In light of the foregoing, the undersigned hereby **RESPECTFULLY RECOMMENDS** that Plaintiff United States' Motion for Order Compelling Putative Claimants to Show Cause Why Their Claims Should Not Be Stricken (ECF No. 27) should be **DENIED**.

Pursuant to S.D. Fla. Magistrate Rule 4(b), the parties may serve and file written objections to this Recommendation with Judge Gayles, within fourteen (14) days after being served with a copy of this Report and Recommendation. Failure to file timely objections shall bar the parties from attacking on appeal any factual findings contained herein. RTC v. Hallmark Builders, Inc., 996 F.2d 1144 (11th Cir. 1993); LoConte v. Dugger, 847 F.2d 745 (11th Cir. 1988).

**RESPECTFULLY RECOMMENDED** in Chambers at Miami, Florida, this 21 day of December 2016.

**WILLIAM C. TURNOFF**
**United States Magistrate Judge**

cc: Hon. Darrin P. Gayles
All Counsel of Record